**Filed Under Seal**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO: _____ |
| v. | : | DATE FILED: June 20, 2012 |
| EUGENE GOLDMAN, M.D. <br> a/k/a "Yevgeniy Goldman" | : <br> : <br> : <br> : | VIOLATIONS: <br> 18 U.S.C. 371 (conspiracy- 1 count) <br> 42 U.S.C. § 1320a-7b(b)(1)(A) (receiving kickbacks for Medicare referrals - 5 counts) <br> 18 U.S.C. § 2 (aiding and abetting) |

## INDICTMENT

## COUNT ONE

(Conspiracy)

**THE GRAND JURY CHARGES THAT:**

### INTRODUCTION

At all times material to this indictment:

### BACKGROUND

1. Home Care Hospice, Inc. ("HCH"), a for-profit hospice provider, was incorporated in 1999 under the laws of the Commonwealth of Pennsylvania. HCH was headquartered at 1810 Grant Avenue, Philadelphia, Pennsylvania until approximately April 2006, at which time HCH relocated to 2801 Grant Avenue in Philadelphia. HCH was in the business of providing hospice services for patients at nursing homes, hospitals and private residences.

2. HCH received Medicare, Medicaid and private insurance reimbursement for providing home care and in-facility care to purportedly terminally ill patients with life expectancy prognoses of six months or less. HCH was certified to participate in the Medicare

program on or about June 15, 2000. HCH was certified to participate in the Medicaid program on or about October 1, 2000.

        3.     Alex Pugman (charged elsewhere) was an owner and Director of HCH. As Director, Pugman handled the daily operations of HCH, which included, among other things, the supervision of clinical care, development and marketing activities, payroll, and claims submission. Pugman directed and caused others, including his spouse, Svetlana Ganetsky, to pay illegal remuneration, that is, kickbacks and bribes, to professionals who referred Medicare and Medicaid patient beneficiaries to HCH.

        4.     Svetlana Ganetsky (charged elsewhere) was the Development Executive at HCH. Her primary duties included marketing HCH to health care professionals. One of Ganetsky's responsibilities was to pay illegal remuneration, that is, kickbacks and bribes, to health care professionals who referred Medicare and Medicaid patient beneficiaries to HCH.

        5.     Defendant EUGENE GOLDMAN, M.D., a/k/a, Yevgeniy Goldman, was a physician licensed by the state of Pennsylvania with a practice in Philadelphia. From approximately December 2000 until approximately July 2011, defendant GOLDMAN also served as the Medical Director for HCH. Under the terms of the written contract, defendant GOLDMAN's responsibilities included, among other things, quality assurance, consultation on the clinical needs of patients and assisting in the evaluation of an appropriate plan of care, participating in the Professional Advisory Committee and Ethics Committee, and assisting the development of staff education program and materials. According to the terms of the written contract, defendant GOLDMAN was paid $100 per hour to fulfill his contractual duties. From

approximately December 2000 until approximately July 2011, defendant GOLDMAN regularly referred Medicare or Medicaid patient beneficiaries to HCH.

### The Medicare and Medicaid Programs and Hospice Care

6. The Department of Health and Human Services was a department of the United States government with responsibilities under federal law for the funding, administration and supervision of certain health care programs, including the Medicare program. Medicare was a federal health insurance program that provided coverage for individuals 65 years or older and for certain disabled individuals. Medicare was financed by federal funds from payroll taxes and premiums paid by beneficiaries. Medicare was a "health care benefit program" as defined in 18 U.S. C. § 24(b), and was a "Federal health care program" as defined by Title 42, United States Code, Section 1320a-7b(f).

7. The Medicare program consisted of several parts, one of which, relevant to this indictment, was referred to as "Part A" hospital insurance, which covered hospice care. To qualify for hospice care, a Medicare patient must be certified by a physician as terminally ill with a life expectancy of six months or less if the terminal condition runs its normal course.

8. Medicaid is a federally-assisted grant program for the states. The Centers for Medicare and Medicaid Services, a federal agency within the United States Department of Health and Human Services, administers the federal assistance to Medicaid. In Pennsylvania, the Department of Public Welfare, an agency of the Commonwealth of Pennsylvania, administers Medicaid. Medicaid provides health insurance to Pennsylvania residents who are indigent or otherwise qualified Pennsylvania residents. Medicaid is a "health care benefit program," as

3

defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

9. As a certified hospice provider, HCH submitted claims and received fixed per-diem payments from Medicare and Medicaid. For Medicare beneficiaries, HCH submitted claims to the federal contractor responsible for managing Medicare's claims for various hospice providers in the United States, including Pennsylvania based providers. For Medicaid beneficiaries, HCH submitted claims to the Department of Public Welfare. The Medicare and Medicaid claims submitted by HCH were for each day that a patient was enrolled in hospice care. Medicare and Medicaid claims were paid based on the level of hospice care claimed to have been provided.

## THE ANTI-KICKBACK STATUTE

10. The federal anti-kickback statute is codified at Title 42, United States Code, Section 1320a-7b(b). Under the anti-kickback statute, among other things, it is illegal to knowingly and willfully confer any remuneration, including any bribe, kickback or rebate, to any person, if any one purpose of conferring that remuneration is to induce that person to refer an individual for the furnishing of any item or service for which payment may be made under a Federal health care program.

11. The purpose of the anti-kickback statute is to protect the Medicare and Medicaid programs from increased costs and abusive practices resulting from provider decisions that are based on self-interest rather than cost, quality of care or necessity of services.

## THE CONSPIRACY

12. From in or about December 2000 to October 2008, in the Eastern District of Pennsylvania and elsewhere, defendant

**EUGENE GOLDMAN, M.D.**
**a/k/a Yevgeniy Goldman**

knowingly and willfully combined, conspired, confederated and agreed with others known and unknown to the grand jury, including Alex Pugman and Svetlana Ganetsky, to commit certain offenses against the United States, that is, knowingly and willfully solicited and received remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind in return for referring individual patients to Home Care Hospice, Inc., to furnish and arrange to furnish any item and service for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## OBJECT OF THE CONSPIRACY

13. It was the object of the conspiracy for the defendant EUGENE GOLDMAN, M.D. to unlawfully enrich himself by receiving kickback payments to refer patients to Home Care Hospice, Inc., for hospice services that were submitted to Medicare and Medicaid for payment.

## MANNER AND MEANS

It was part of the conspiracy that:

14. Alex Pugman and Svetlana Ganetsky paid kickbacks to various health care professionals, including defendant EUGENE GOLDMAN, M.D., to provide referrals of

Medicare and Medicaid patient beneficiaries to HCH, to increase patient census and profits by billing Medicare and Medicaid for patients admitted to and maintained on census.

15. Alex Pugman and Svetlana Ganetsky paid kickbacks to defendant EUGENE GOLDMAN, M.D. in checks drawn on an HCH bank account, or, in cash. Although the payment amounts varied over time, payments were based on the number of Medicare and Medicaid patients beneficiaries referred and admitted to HCH in a particular month, as well as the number of Medicare and Medicaid patients beneficiaries that remained on service with HCH each month.

16. To conceal the fact that kickbacks were paid, Alex Pugman and defendant EUGENE GOLDMAN, M.D. entered a written contract to create the false appearance that all payments to defendant GOLDMAN from HCH were for services rendered in defendant GOLDMAN's capacity as Medical Director. The contract was structured to enable defendant GOLDMAN to receive payments for services at $100 per hour when in reality this provided flexibility to Alex Pugman and defendant GOLDMAN to mask payments for patient referrals.

17. From in or about December 2000 to October 2008, defendant EUGENE GOLDMAN, M.D. regularly referred patients to HCH for hospice services later submitted to Medicare or Medicaid for reimbursement.

18. From in or about December 2000 to October 2008, on a weekly or monthly basis, HCH paid defendant EUGENE GOLDMAN, M.D. by check for Medicare and Medicaid patient referrals.

19. From January 2004 to October 2008, HCH made payments to defendant EUGENE GOLDMAN, M.D. totaling approximately $228,773 for Medicare and Medicaid patient referrals.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one of the conspirators committed and caused to be committed, in the Eastern District of Pennsylvania, one or more of the following overt acts:

20. On or about August 10, 2007, HCH provided defendant EUGENE GOLDMAN, M.D. with a check in the amount of $1,450 for patient referrals.

21. On or about September 7, 2007, HCH provided defendant EUGENE GOLDMAN, M.D. with a check in the amount of $2,450 for patient referrals.

22. On or about October 5, 2007, HCH provided defendant EUGENE GOLDMAN, M.D. with a check in the amount of $2,200 for patient referrals.

23. On or about June 6, 2008, HCH provided defendant EUGENE GOLDMAN, M.D. with a check in the amount of $1,450 for patient referrals.

24. On or about July 11, 2008, HCH provided defendant EUGENE GOLDMAN, M.D. with a check in the amount of $1,850 for patient referrals.

25. On or about September 5, 2008, HCH provided defendant EUGENE GOLDMAN, M.D. with a check in the amount of $1,450 for patient referrals.

In violation of Title 18, United States Code, Section 371 and Title 42, United States Code, Section 1320a-7b(b).

## COUNTS TWO THROUGH FIVE
(Anti-Kickback Statute)

THE GRAND JURY FURTHER CHARGES THAT:

1. Paragraphs 1 through 10 of Count One are incorporated here.

2. On or about each of the dates listed below, in the Eastern District of Pennsylvania, defendant

### EUGENE GOLDMAN, M.D.
a/k/a Yevgeniy Goldman

knowingly and willfully solicited and received remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind in return for referring individual patients to Home Care Hospice, Inc., to furnish and arrange to furnish any item and service for which payment may be made in whole and in part under a Federal health care program, as follows (each payment constituting a separate count of this indictment):

| Count | Approx. Kickback Amount | Payment Method | Approx. Date of Payment |
|---|---|---|---|
| 2 | $1,700 | Check #1061 | 1/9/2009 |
| 3 | $3,900 | Check #1060 | 1/9/2009 |
| 4 | $1,000 | Check #1062 | 2/6/2009 |
| 5 | $1,200 | Cash | 3/12/2009 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## COUNT SIX
## (Anti-Kickback Statute)

THE GRAND JURY FURTHER CHARGES THAT:

1. Paragraphs 1 through 10 of Count One are incorporated here.

2. On or about the date listed below, in the Eastern District of Pennsylvania, defendant

**EUGENE GOLDMAN, M.D.**
**a/k/a Yevgeniy Goldman**

knowingly and willfully solicited and received and aided and abetted the solicitation and receipt of remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind in return for referring individual patients to Home Care Hospice, Inc., to furnish and arrange to furnish any item and service for which payment may be made in whole and in part under a Federal health care program, as follows:

| Count | Approx. Kickback Amount | Payment Method | Approx. Date of Payment |
|---|---|---|---|
| 6 | $1,200 | Cash on behalf of V.B. | 1/9/2009 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

A TRUE BILL:

_____
FOREPERSON

*[signature]*
ZANE DAVID MEMEGER
United States Attorney